IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-02254-PAB-BNB

DAVID IRONS,

Plaintiff,

v.

ENDRE SAMU,
ANITA BLOOR, and
COLORADO DEPARTMENT OF CORRECTIONS,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the following cross-motions for summary judgment:

1. **Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56** [Doc. #166, filed 01/15/2009] (the "Plaintiff's Motion"), and

2. **Defendants' Combined Motion for Summary Judgment . . . .** [Doc. #171, filed 01/22/2009].

I respectfully RECOMMEND that the Plaintiff's Motion be DENIED. I further RECOMMEND that the Defendants' Motion be GRANTED and that summary judgment enter in favor of the defendants on all of the plaintiff's claims.

**I. STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as an advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

Affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." Id.

The plaintiff attached to his Motion the affidavit of Dennis Blay. Mr. Blay's affidavit is largely incomprehensible, and it does not set forth facts that would be admissible in evidence. Therefore, I do not consider Mr. Blay's affidavit in my analysis of this matter.

The defendants have attached to their Motion the affidavit of Dr. Paula Frantz and the affidavit of Neta Bruch. *Defendants' Motion*, Ex. G. The plaintiff objects to Dr. Frantz's affidavit because it contains expert testimony, and Dr. Frantz was not disclosed as an expert witness. *Plaintiff's Answer to the Defendant's [sic] Motion for Summary Judgment* [Doc. #179] ("Plaintiff's Response"), p. 1, ¶ 2. The defendants do not address the plaintiff's objection to Dr. Frantz's affidavit, and they do not provide any evidence demonstrating that Dr. Frantz was disclosed as an expert. Therefore, those portions of Dr. Frantz's affidavit that constitute expert testimony are stricken. The plaintiff's request to strike Dr. Frantz's affidavit in its entirety is denied.

The plaintiff objects to the affidavit of Neta Bruch because it was obtained after the close of discovery and was submitted in bad faith. He also objects to the Defendants' Motion because the defendants received an extension of time to submit the motion in order to obtain the affidavit of defendant Samu, but Samu's affidavit was not attached to the motion. *Plaintiff's Response*, p. 1, ¶¶ 1, 3. His objections are unsupported and without merit. The objections are denied.

## II. UNDISPUTED MATERIAL FACTS[1]

1. The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC"). At all times pertinent to the allegations of his Prisoner Complaint (the "Complaint"), he was incarcerated at the Limon Correctional Facility ("LCF").

2. On June 20, 2006, the plaintiff and his cell mate, Dennis Blay, were moved from Unit 5 to Unit 1-A Pod after reporting that their safety had been threatened by other inmates living in Unit 5. *Defendants' Motion*, pp. 2-3, ¶¶ 3, 6; *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 3. Unit 1-A Pod is a transitional unit, and inmates are subject to movement to another living unit unless they identify issues and individuals that would prevent them from moving to a particular unit. *Defendants' Motion*, p. 3, ¶ 8.

3. On June 22, 2006, the plaintiff and Mr. Blay were moved to Unit 2. *Defendants' Motion*, p. 3, ¶ 10; *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 5. The plaintiff was assaulted that afternoon while he was returning to his cell from work. *Defendants' Motion*, p. 3, ¶ 10; *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 6.

4. Correctional Officer Romero noticed puffiness under the plaintiff's left eye when she was performing the inmate count in Unit 2. *Defendants' Motion*, p. 3, ¶ 11; *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 7. The plaintiff and Mr. Blay were taken to the medical department for

---

[1]The plaintiff does not provide evidentiary support for many of his factual statements. I do not consider factual statements that are not supported by evidence. In addition, the plaintiff repeatedly contends that undisputed facts were established in the defendants' brief in support of their motion to dismiss. E.g., *Plaintiff's Response*, p. 5. The brief contains a section entitled "Undisputed Facts as Alleged in the Complaint." *Memorandum Brief in Support of Defendant' Motion to Dismiss* [Doc. #24], p. 2. This section contains the following note: "[f]or purposes of this motion only, except as otherwise indicated, the CDOC Employees accept the facts as alleged by Plaintiff as true and assumes that Plaintiff can prove the facts alleged in the complaint." Id. at n.1. The defendants' motion to dismiss and supporting brief did not concede any undisputed facts for purposes of summary judgment.

examination. *Defendants' Motion*, p. 3, ¶ 12; *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 8. The plaintiff was examined by Pamela McMillen, R.N., and Dr. Anita Bloor. *Defendants' Motion*, p. 4, ¶ 18; *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 8.

     5.   Dr. Bloor and Ms. McMillen documented that the plaintiff had a wound on his nose. The wound was cleaned with a saline solution and an antiseptic solution. *Defendants' Motion*, Ex. G, Attachment 4; Ex. C, Response to Interrogatory No. 19. An antibiotic ointment also was applied. Id. These preparations are used to clean wounds and prevent infection of wounds. Id. at Ex. C., Response to Interrogatory No. 19.

     6.   Dr. Bloor performed a neurological examination on the plaintiff. *Defendants' Motion*, Ex. G, Attachment 4; Ex. C, Response to Interrogatory No. 20. A neurological examination is designed to see whether the brain, the spinal cord, and the nerves are functioning normally. Id. at Ex. C, Response to Interrogatory No. 20. A neurological examination may include an evaluation of the eyes, extremity strength, and limb movement. Id.

     7.   Dr. Bloor found that the plaintiff's pupils were equally round and reactive to light, which is normal. Id. at Ex. G, Attachment 4, p. 1; Response to Interrogatory No. 21. The purpose of the eye examination is to check for abnormalities in the eye and in the nerves connecting the eye to the brain. Id. at Response to Interrogatory No. 25. Dr. Bloor also found that the plaintiff had equal strength in his hands and feet and that he walked without difficulty. Id. at Ex. G, Attachment 4, p. 1.

     8.   The plaintiff's injuries were documented on an "Anatomical Form." Id. at p. 2. The injuries are described as (1) a small abrasion approximately ½ inch in size on the left side of the nose; (2) bruising on the left ear and temple area; (3) bruising to the left eye area and below the

left eye; (4) bruising to the inside and outside of the lips and one broken tooth; (5) a reddened area on the upper left arm; (6) bruising of the knuckle on the left fifth finger; (7) a reddened area on the mid upper back and small scratches on the lower area of the left side of the back; and (8) a scratch on the right side of the head above the ear. Id.

9. The plaintiff was scheduled for a neurological recheck in the morning. Id. A nurse documented that the plaintiff's neurological examination was within normal limits; his pupils were equal and reactive to light; and he was able to walk without difficulty. Id. at Attachment 5.

10. The plaintiff had an intake history and physical completed in May 2000. At that time, it was noted that he had rampant tooth decay. Id. at Ex. G, ¶ 10; Attachment 1. On a DOC "Self Reported History" form dated May 12, 2000, the plaintiff stated "need some broken teeth removed." Id. at ¶ 11; Attachment 2. Upon arrival at LCF on June 13, 2000, the plaintiff self reported his "teeth breaking up." Id. at ¶ 12; Attachment 3. The plaintiff was evaluated by a dentist on July 20, 2006, and was found to have rampant dental decay. Id. at ¶ 15; Attachment 6. The dentist recommended removal of numerous teeth. Id. at ¶ 18; Attachments 6 and 9. The plaintiff refused to have his teeth extracted. Id. at ¶ 19; Attachment 10.

11. If an inmate requests a referral to the mental health department during an examination, the DOC medical staff may refer the inmate directly to the mental health department if it is determined that the situation is urgent. An urgent situation is one where medical staff have concerns that the inmate is unstable due to a mental health condition and is at risk of harming himself or others. If medical staff determine that the situation is not urgent, the inmate may submit a kite for a scheduled appointment with the mental health department. Id. at Ex. D, Response to Interrogatory Nos. 16 and 26.

12. The decision to prescribe pain medication is the sole responsibility of a licensed medical provider with prescriptive authority. The decision to prescribe any medication is driven by medical necessity as determined by the physical exam, diagnosis, and history. Id. at Response to Interrogatory No. 17. Inmates are allowed to purchase from the canteen and keep a small supply of over-the-counter pain medications. Id. at Response to Interrogatory No. 19. The allowed medications include ibuprofen and acetaminophen. Id.

13. The decision to apply ice to bruised or swollen injuries is made by a medical provider or nurse and is based on medical necessity. Id. at Response to Interrogatory No. 20.

14. On July 13, 2006, the plaintiff filed a grievance which contained the following questions and complaints:

> 1. Why wasn't I provided with ice to help reduce the swelling of my injuries?
>
> 2. Why was my request for Motrin denied and or ignored?
>
> 3. Why haven't I been scheduled a Dentist appointment to determine if I have any new broken teeth as a result of the assault?
>
> 4. Why wasn't I provided with the opportunity to speak with someone from mental health?
>
> 5. Why did medical staff fail to provide follow up treatment for the injuries I sustained?
>
> From the outset of the original injuries I have been suffering from persistent headaches, continuous pain in my left pinky, right ring finger; and back. I am requesting that medical staff take the necessary steps to determine the full extent of the injuries I sustained and that medical staff take all necessary steps to ensure a full recovery from my injuries.

*Defendants' Motion*, Ex. G, ¶ 16; Attachment 7.

15. A registered nurse responded to the plaintiff's grievance as follows:

>   1.) extent of injuries did not require ice
>
>   2.) RN has no recall of request for motrin on the day of the injury or the next day when you were seen as follow-up by another RN. You could have sent in a kite requesting motrin or follow-up exam by your provider after the incident.
>
>   3.) RN left request for follow-up in the dental box. Unclear as to what happened to the request. Will refer you to the dentist now.
>
>   4.) mental health can only be accessed via kite and not medical referral.
>
>   5.) you were seen the next day by another RN for follow-up with a normal exam. You also have the ability to access your provider at any time via kite.
>
>   Grievance partially granted for follow-up with dentist. Rest of grievance is denied.

Id. at ¶ 17; Attachment 8.

The plaintiff filed his initial complaint on November 9, 2006 [Doc. #3]. Pursuant to the court's order [Doc. #5], he filed an amended complaint on January 3, 2007 [Doc. #6]. On May 17, 2007, the defendants filed a motion to dismiss [Doc.#23]. On March 14, 2008, the plaintiff submitted a proposed second amended complaint [Doc. #61], which is substantially similar to the amended complaint. On March 24, 2008, the district judge granted in part and denied in part the defendants' motion to dismiss [Doc. #63]. In doing so, the district judge applied his ruling to the second amended complaint. Accordingly, I direct the Clerk of the Court to accept the proposed second amended complaint (the "Complaint") for filing.

Both parties agree that the following claims are extant: (1) the claims for prospective injunctive relief; (2) Claim One as against defendant Samu in his individual capacity for deliberate indifference to the plaintiff's safety needs in violation of the Eighth Amendment; and

(3) Claim Two against defendant Bloor for deliberate indifference to the plaintiff's medical needs in violation of the Eighth Amendment. *Defendants' Motion*, pp. 1-2; *Plaintiff's Motion*; *Plaintiff's Response*. Both parties seek summary judgment on all claims.

The plaintiff seeks $75.00 in compensatory damages; punitive damages; and an order requiring that Dr. Bloor and all medical staff "be required to impliment [sic] procedures which would require ice, pain relievers, x-rays, M.R.I.'s, and mental health assistance for those who have been assaulted along with any other necessary medical care with which may be further required." *Complaint*, p. 10.[2]

### III.  ANALYSIS

Defendants Samu and Bloor assert that they are entitled to qualified immunity on the plaintiff's claims. Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity not only shields a defendant from unwarranted liability, it also protects the defendant from the burdens of defending a suit. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The qualified immunity defense is available only to government officials sued in their individual capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

---

[2]The plaintiff also requests injunctive relief based on the defendants' failure to pursue criminal and disciplinary charges and as against defendants Trani, Jones, and Johnson. Id. However, the plaintiff's claims regarding constitutional violations based on the defendants' failure to pursue criminal and disciplinary charges and his claims against defendants Trani, Jones, and Johnson have been dismissed [Doc #63].

When a defendant asserts a qualified immunity defense on summary judgment, a heavy two-part burden shifts to the plaintiff.  Medina, 252 F.3d at 1128.  The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right."  Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted).  The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue."[3]  Id.  "A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  Id.  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."  Medina, 252 F.3d at 1128.

### A.  Claim One

Claim One alleges that defendant Samu was deliberately indifferent to the plaintiff's safety in violation of the Eighth Amendment.  The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates."  Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A prisoner asserting a claim

---

[3]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Manzanares v. Higdon, 2009 WL 2430643 *3 n.6 (10th Cir. Aug. 10, 2009).

for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference. Id.

Although an inmate "does not have to await the consummation of threatened injury to obtain preventive relief," a plaintiff "must furnish more than a conclusory claim of being afraid." Riddle v. Mondragon, 83 F.3d 1197, 1205 (10th Cir. 1996). To satisfy the first prong of the Farmer test, "[a] prisoner must demonstrate that the deprivation was sufficiently serious and that a prison official's act or omission resulted in the denial of the minimal civilized measure of life's necessities." Grimsley v. MacKay, 93 F.3d 676, 681 (10th Cir. 1996). "This is an objective standard. Such conditions have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by . . . separating the prisoner from other inmates who previously have attacked him on multiple occasions." Id.

Deliberate indifference means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, the plaintiff attests that on June 21, 2006, Samu asked him if he could move to Unit 2. The plaintiff informed Samu that he could not move to Unit 2 "because a known gang member had made arrangements to have [him] assaulted or worse" if he should get moved to Unit 2. *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 4. The plaintiff provided a copy of a Step 1 Grievance wherein he stated that he told Samu that an inmate named James reported to "his gang member buddies that we were going to move to Unit 2 in December of 2005. It was reported to

11

us that if we were to move to Unit 2 that Blay and myself would be 'Smashed' if we moved to Unit 2. When the time came for us to move to Unit 2 both Blay and myself refused to move because of this threat."[4] *Plaintiff's Reply Re: Defendant's Response to the Plaintiff's Motion for Summary Judgment* [Doc. #192], Ex. 1. The plaintiff further attests that after providing Samu with the information that he would likely be assaulted if he moved to Unit 2, Samu "spoke to the known gang leaders in Unit 1-A Pod and Unit 2 A-Pod" and told them to "leave Irons alone." *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 5. After he was moved to Unit 2, he was assaulted by an inmate named Matthew Fisher. Id. The plaintiff asserts that the assault "was suspected to be gang related," *Plaintiff's Motion*, Plaintiff's Affidavit, ¶ 5, and he attached to his affidavit two incident reports written by LCF staff which state that the assault was suspected to be gang related. Id. at attachments 4, 5.

This evidence is not sufficient to show that Samu had actual knowledge of and disregarded an excessive risk to the plaintiff's safety. There is no evidence that the attack by Matthew Fisher on June 22, 2006, is related to the threat involving inmate James which was made in December 2005. Nor is there any evidence of previous assaults on the plaintiff by James or his gang members or that Samu knew of any previous assaults; that James or any of his gang members were still residing in Unit 2; or that Samu knew the identity of any of the gang members.

In addition:

> [B]ecause the Eighth Amendment requires only reasonable safety, prison officials who actually knew of a substantial risk to inmate

---

[4] Samu denies that the plaintiff (or anyone else) informed him that the plaintiff was likely to be assaulted if he was moved to Unit 2. *Plaintiffs' Motion*, Ex. 1, Response to Interrogatory No. 2.

> health or safety may be found free from liability if they responded
> reasonably to the risk, even if the harm ultimately was not averted.
> An official responds to a known risk in an objectively
> unreasonable manner if he knew of ways to reduce the harm but
> knowingly [or] recklessly declined to act. In determining whether
> prison officials acted reasonably, we consider what actions they
> took, if any, as well as available alternatives that might have been
> known to them.

Howard v. Waide, 534 F.3d 1227, 1239 (10th Cir. 2008) (internal citations and quotations omitted).

The plaintiff acknowledges that Samu consulted with the plaintiff's case manager, the unit captain, and the gang coordinator prior to placing the plaintiff in Unit 2, *Plaintiff's Motion*, p. 4, and he admits that Samu told the gang leaders in Unit 2 to leave the plaintiff alone prior to transferring him there. Id. at Plaintiff's Affidavit, ¶ 5. The plaintiff argues that Samu told the gang leaders to leave the plaintiff alone knowing it would "appear as though he attempted to prevent the assault on Irons." He further argues that "Samu also knew that if he did not tell the gang leaders that they would face disciplinary action and criminal charges if Irons were assaulted, merely telling these gang leaders to 'leave Irons alone' would actually do nothing to prevent Irons from being assaulted." *Plaintiff's Motion*, p. 1. The plaintiff's arguments are pure conjecture. He does not provide any evidence to show that Samu's actions were unreasonable or that a prison official must follow a command with a verbal threat of disciplinary action and criminal charges in order for the command to be valid.

The plaintiff also argues that Samu was deliberately indifferent because Samu conducted an investigation following the assault, learned the identity of the attacker, and "opted not to pursue disciplinary charges and criminal charges" against him. Id. The plaintiff does not provide any evidence to support this argument. Indeed, the evidence shows that the unit

13

disciplinary officer was responsible for pursuing charges against the plaintiff's attacker, not Samu. Id. at Ex. 2, Response to Interrogatory No. 15.

The plaintiff has not produced any evidence to establish that defendant Samu knew of and disregarded an excessive risk to his safety.

### B. Claim Two

Claim Two alleges that defendant Bloor was deliberately indifferent to the plaintiff's medical needs in violation of the Eighth Amendment. The government has a constitutional obligation to provide inmates with "a level of medical care which is reasonably designed to meet the routine and emergency health care needs of inmates." Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir. 1980). A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).    The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

14

The undisputed evidence shows that the plaintiff was taken to the medical department and evaluated by a nurse and a doctor directly after he was found by Officer Romero. He had a small abrasion on his nose; small scratches on his lower back and a scratch on the right side of his head; bruising on his left temple, lips, left eye, and left fifth digit; a broken tooth;[5] and reddened areas on his back and upper left arm. His wounds were cleaned and antibiotic ointment was applied. A neurological examination was performed and was normal. His neurological status was reassessed the following day and was found to be normal. He had access to over-the-counter pain medications at the canteen, and he could access the mental health department by submitting a kite. He was evaluated by a dentist less than one month after the assault.

The plaintiff attests that Dr. Bloor was deliberately indifferent to his medical needs because during his examination on June 22, 2006, he asked her if he "could see someone from mental health and she said she couldn't make the referral." *Plaintiff's Motion*, Plaintiff's Affidavit, ¶8. The undisputed evidence demonstrates that the decision to refer an inmate directly to the mental health department lies solely with the health care provider; a referral is made if the situation is urgent; and an urgent situation is one where the medical staff has concerns that the inmate is unstable and is at risk of harming himself or others. The plaintiff has not produced any evidence that he satisfied the criteria required to demonstrate urgency. His disagreement with Dr. Bloor's decision does not evince deliberate indifference on the part of Dr. Bloor. "[A] prisoner who merely disagrees with a . . . prescribed course of treatment does not state a constitutional violation." Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir.

---

[5]The plaintiff has a history of rampant tooth decay, and it is not clear from the record whether the broken tooth was preexisting or was the result of the assault. Regardless, it is undisputed that the plaintiff has refused any treatment for his teeth.

1999). Moreover, there is no evidence that the plaintiff did not have reasonable access to a mental health care provider. The undisputed evidence shows that he could have submitted a kite for a scheduled appointment with the mental health department.

The plaintiff also attests that Dr. Bloor was deliberately indifferent to his health care needs because he asked her for Motrin; she said he could purchase Motrin at the canteen; he informed her that he had already taken four pills and was still in pain; and she responded that she would not be able to do anything for him at that time. *Plaintiff's Motion*, Plaintiff's Affidavit, 8. The record does not show that the plaintiff asked for anything other than Motrin. Indeed, his grievance addresses only a request for Motrin. It is undisputed that the plaintiff could purchase Motrin from the canteen. The plaintiff's allegation that Dr. Bloor refused to provide it to him in the clinic does not show that she knew of and disregarded an excessive risk to his health.

Finally, the plaintiff attests that Dr. Bloor was deliberately indifferent to his medical needs because he asked for ice to apply to his injuries and was told that the medical department no longer provided ice. Id. It is undisputed that the application of ice is within the discretion of the health care provider. It is also undisputed that the medical department informed the plaintiff that the extent of his injuries did not require ice. The plaintiff's disagreement with this course of treatment does not rise to the level of a violation of his Eighth Amendment rights.[6]

The United States Supreme Court has stated:

---

[6]The plaintiff also alleges that he was "unnecessarily made to endure several months of pain because Dr. Bloor decided Irons had no further need of medical treatment." *Plaintiff's Motion*, p. 1. However, he does not provide any evidence that Dr. Bloor ever refused to see him. He merely alleges that he had an appointment to see her on July 20, 2006; the appointment was cancelled; and he saw the dentist instead. Id. at pp. 1-2.

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The plaintiff has failed to produce any evidence to demonstrate that Dr. Bloor knew of and disregarded an excessive risk to his health. Because I find that the medical care received by the plaintiff was constitutionally sound, the plaintiff's request for injunctive relief against Dr. Bloor and the medical staff must also fail.

## IV. CONCLUSION

The plaintiff has failed to show that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity. Medina, 252 F.3d at 1128. Accordingly,

I respectfully RECOMMEND that the Plaintiff's Motion be DENIED.

I further RECOMMEND that the Defendants' Motion be GRANTED and that summary judgment enter in favor of the defendants on all of the plaintiff's claims.

FURTHER, IT IS ORDERED that the Clerk of the Court shall accept for filing the plaintiff's proposed second amended complaint [Doc. #61].

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific,

written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated October 2, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge